UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION - FLINT

| | |
|---|---|
| IN RE: DEBORAH S. LASH, | Case No: 08-30200 |
| Debtor. | Ch. 13 |
| _____/ | Hon. Daniel S. Opperman |
| DEBORAH S. LASH, | |
| Plaintiff, | |
| v. | Adv. Pro. No. 08-03026 |
| SUNTRUST MORTGAGE, INC., TODD LASH, and TAIT FAMILY TRUST, | |
| Defendants | |
| and | |
| SUNTRUST MORTGAGE, INC., | |
| Cross-Plaintiff, | |
| v. | |
| TODD LASH and TAIT FAMILY TRUST, | |
| Cross-Defendants. | |
| _____/ | |

## OPINION DENYING MOTION OF SUNTRUST MORTGAGE, INC. FOR SUMMARY JUDGMENT AND GRANTING SUMMARY JUDGMENT IN FAVOR OF PLAINTIFF

Before the Court is the motion for summary judgment filed by Defendant and Cross-Plaintiff, SunTrust Mortgage, Inc. ("SunTrust"). For the reasons explained below, this Court denies SunTrust's motion and grants summary judgment to Plaintiff as a matter of law.

### I. Jurisdiction

This Court has subject matter jurisdiction over this proceeding under 28 U.S.C. §§ 1334(b), 157(a), and 157(b)(1) and E. D. Mich. LR 83.50(a). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(K).

## II. Procedural History

On January 22, 2008 Deborah S. Lash filed an individual Chapter 13 petition. (#08-30200). Debtor's husband, Todd A. Lash, did not file bankruptcy. In her Schedule A, Debtor disclosed her interest in a residence located at 4664 S. Ruess Road, Owosso, Michigan and vacant land at 4664 W. Garrison Road, Owosso, Michigan (the "Property"). Debtor represented she owned both of these properties jointly with her husband. She listed the value of her residence as $100,000 and the value of a secured claim as zero. Debtor listed the value of the vacant land as $30,000 and a secured claim of $20,000. In her Schedule C, Debtor claimed exemptions under Michigan law and exempted the property pursuant to Mich. Comp. Laws § 600.5451(o). Debtor did not claim an exemption in the vacant land.

In her Schedule D, Debtor listed the Tait Family Trust as holding a secured claim against vacant land and her residence in the amount of $40,000. In her Schedule F, Debtor listed SunTrust as holding a disputed unsecured claim due to an "invalid mortgage on residence" of $141,000.

On February 21, 2002, SunTrust filed a claim in the amount of $201,536.19 secured by a mortgage on Debtor's residence. Debtor filed an objection to SunTrust's claim on March 7, 2008. (Dkt. #36).

On February 22, 2008 Debtor commenced this adversary proceeding naming SunTrust Mortgage, Inc., Todd Lash, and the Tait Family Trust as Defendants. Debtor seeks a declaratory judgment that SunTrust's mortgage is not valid. On March 6, 2008, Defendant Tait Family Trust filed an answer admitting its interest in the property and concurring with the relief sought by the Debtor. (Dkt. #3). On April 21, 2008, SunTrust filed an answer and affirmative defenses. (Dkt. #10). On this same date, SunTrust also filed a Cross Claim to reform the mortgage against Todd Lash and the Tait Family Trust. (Dkt. #11). While Defendant Todd Lash admits the existence of SunTrust's mortgage, he denies its validity. Likewise, the Tait Family Trust's position is that SunTrust's mortgage is not valid.

On June 30, 2008, SunTrust filed a motion for summary judgment on Debtor's Complaint and its Cross Claim. (Dkt. #34). Debtor filed a response on July 14, 2008.

2

(Dkt. #35). The Tait Family Trust filed a response to SunTrust's motion for summary judgment on July 15, 2008. (Dkt. #36). SunTrust filed a reply to Debtor's answer on August 13, 2008. (Dkt. #43). The Court held a hearing in this proceeding on August 20, 2008. At this hearing, counsel for Plaintiff and SunTrust both agreed that the requisite factual foundation existed to warrant summary judgment. Neither party believed a trial was necessary.

### III. Undisputed Facts

The following are the undisputed facts. On September 1, 2000, Debtor and her husband, Todd Lash, executed a land contract with Harold and Patricia Rice for the Property, then vacant land. (Defendant's Ex. 6A (Dkt. #34, part 7)). The purchase price of the Property was $27,000. (Defendant's Ex. 6A (Dkt. #34, part 7)).

Sometime in November 2000, Debtor by herself sought a loan from SunTrust to payoff the land contract to the Rices and for funds to construct a residence on the Property. On November 29, 2000, Debtor signed a note promising to pay to SunTrust the amount of $112,500. (Defendant's Ex. 6C (Dkt. #34, part 9)). As security for the note, Debtor executed a mortgage against the Property to SunTrust. (Defendant's Ex. 6D (Dkt. #34, part 10)). The mortgage was recorded with the Shiawassee County Register of Deeds on January 10, 2001. (Defendant's Ex. 6D (Dkt. #34, part 10)). Debtor's husband, Todd Lash, was not a party to the note or mortgage. (See Defendant's Ex. 6C and 6D (Dkt. #34, parts 9 and 10)).

Loan proceeds in the amount of $21,960.29 were immediately used to pay off the land contract to the Rices. (Defendant's Ex. 6B (Dkt. #34, part 8)). As a result, on November 29, 2000, the Rices executed a warranty deed conveying the Property to both "Todd A. Lash and Deborah S. Lash, husband and wife." (Defendant's Ex. 6E (Dkt. #34, part 11)). The remaining loan proceeds were held back for disbursement during construction of the home on the Property. From December 2000 to April 2001, Debtor obtained construction draws against the loan proceeds until they were depleted.

On July 10, 2001, Debtor signed a "Modification Agreement" modifying the note and mortgage dated November 29, 2000, which increased the amount of both of these

3

documents to $155,000. (Defendant's Ex. 6K (Dkt. #34, part 17)). Debtor's husband, Todd Lash, is not a party to the Modification Agreement. (Defendant's Ex. 6K (Dkt. #34, part 17)).

On October 20, 2003, both Debtor and Todd Lash executed a mortgage to Max R. and Kathleen A. Tait in the amount of $33,000. (Defendant's Ex. 6O Dkt. #34, part 21)). This mortgage was recorded in the Shiawassee County Register of Deeds on October 29, 2003. By this mortgage, Debtor and her husband granted Max R. and Kathleen A. Tait an interest in their residential property and a parcel of vacant land. The loan documents for the mortgage to the Taits specify terms as follows: "Loan position - First on Land, Second on 4664 S. Ruess Road" and "Lender agrees to release lien on 4664 S. Ruess Road property in return for payment of one-third (1/3) of principal balance." (Defendant's Ex. 6P (Dkt. #34, part 22)). This mortgage was later assigned to the Tait Family Trust on October 11, 2004.

## IV. Applicable Law

A.  Summary Judgment Standard

Fed.R.Bankr.P. 7056 renders F.R.Civ.P. 56 applicable in adversary proceedings. Rule 56(c) states that a

> judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.

The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). After adequate time for discovery and upon motion, Rule 56(c) mandates summary judgment against a party who fails to establish the existence of an element essential to that party's case and on which that party bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

It is the burden of the moving party to inform the Court of the basis of its motion and identify those portions of the record that establish the absence of a material issue of

4

fact. *Celotex*, 477 U.S. at 323. Once the movant fulfills this responsibility, the non-moving party must come forward with "specific facts showing that there is a genuine issue for trial." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). This requires the non-moving party to "do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* at 586. A "dispute about a material fact is 'genuine'. . . if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby*, 477 U.S. at 248. To demonstrate a genuine issue, the non-moving party must present sufficient evidence upon which a jury could reasonably find for the non-movant; a "scintilla of evidence" is insufficient. *Anderson v. Liberty Lobby*, 477 U.S. at 252. "A material fact is one that would have the effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties, and would necessarily affect the application of an appropriate principle of law to the rights and obligations of the parties." *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984).

At the summary judgment stage in the litigation, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby*, 477 U.S. at 249. "The judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." *Id.* at 252. The court must believe the non-movant's evidence and draw "all justifiable inferences" in her favor. *Id.* at 255.

## V. The Arguments of the Parties

A.  SunTrust Mortgage

   1.  <u>As to Debtor - Deborah Lash</u>

SunTrust contends it is entitled to summary judgment on Debtor's Complaint for two reasons. First, SunTrust argues that Debtor is estopped from denying the validity of its mortgage under Michigan law. In support of this argument, SunTrust relies on *In re Beglinger Trust*, 221 Mich. App. 273, 561 N.W.2d 130 (1997). Second, SunTrust argues that the mortgage given by Debtor to SunTrust is valid. In support of this

5

position, SunTrust relies on *Fischre v. United States*, 852 F.Supp. 628 (W.D. Mich. 1994).

    2.    <u>As to Todd Lash</u>

SunTrust contends that it is entitled to summary judgment on its Cross Claim against Todd Lash for two reasons. First, SunTrust argues that Todd Lash through his actions subsequent to the time Debtor executed the mortgage and then obtained a modification of the note/mortgage amount to his "ratification" of the mortgage. SunTrust relies on the following Sixth Circuit Court of Appeals and Michigan case law to support its position: *Shuell v. London Amusement Co.*, 123 F.2d 302 (6th Cir. 1941); *Bruno v. Zwirkoski*, 124 Mich. App. 664, 335 N.W.2d 120 (1983); and *Morgan v. Plotkin*, 219 Mich. 265, 189 N.W. 63 (1922). Second, SunTrust argues that Todd Lash is estopped from disputing the validity of the mortgage. To support this argument, SunTrust relies on *Lotian v. City of Detroit*, 414 Mich. 160, 324 N.W.2d 9 (1982).

B.    Debtor

Debtor argues that SunTrust is not entitled to summary judgment on her complaint for two reasons. First, Debtor contends that under Michigan law, SunTrust's mortgage is not valid. Debtor relies on and cites case law that explain the boundaries of property held as tenants by the entireties under Michigan law, including that "neither spouse may unilaterally alienate or encumber" property held as tenants by the entireties. The cases relied on by the Debtor include: *Long v. Earle*, 277 Mich. 505, 269 N.W. 577 (1936); and *In Guzior,* 347 B.R. 237 (Bankr. E.D. Mich. 2006). Second, Debtor points out that neither laches or estoppel apply in this case overall.

With regard to SunTrust's Cross Claim against Todd Lash, Debtor contends that Mr. Lash "did not ratify anything." Debtor contends that Michigan law does not define term "ratification" in the context used by SunTrust in this proceeding. Then Debtor cites to Michigan case law that quotes the concept of ratification from the Restatement of Agency such as *City Nat'l Bank of Detroit v. Westland Towers Apartments*, 152 Mich. App. 136, 142, 393 N.W.2d 554 (1986), and *Echelon Homes, L.L.C. v. Carter Lumber*

*Co.*, 261 Mich. App. 424, 432, 683 N.W.2d 271 (2004) *rev'd in part,* 472 Mich. 192, 694 N.W.2d 544 (2005).

C. The Tait Family Trust

Defendant, Tait Family Trust, requests that the Court deny summary judgment to SunTrust. The Tait Family Trust argues that SunTrust's mortgage is not valid since it was only signed by the Debtor. Its position is that "a contract that conveys an interest in jointly owned real property must be signed by all of the owners of the property. The absence of the signature of a co-owner voids that contract." (Defendant Family Trust's Answer to Motion for Summary Judgment (Dkt. #36)). In support of this position, the Trust relies on *Fields v. Korn*, 366 Mich. 108, 113 N.W.2d 860 (1962); *Forge v. Smith*, 458 Mich. 198, 580 N.W.2d 876 (1998); and Mich. Comp. Laws § 566.106.

VI. Discussion

A. Under Michigan's tenancy by the entireties law the mortgage executed solely by Deborah S. Lash is void.

It is SunTrust's position that its mortgage is valid even though both spouses did not execute the mortgage. SunTrust asserts two arguments in support its position. First, SunTrust contends that the Debtor should be precluded from denying the validity of the mortgage citing *Heyd v. Belinger* (*In re Belinger Trust*) 221 Mich. App. 273, 561 N.W.2d 130 (1997). Second, SunTrust asserts that its mortgage is valid to the extent that it attached to Debtor's right of survivorship remainder interest in the Property. SunTrust cites *Fischre v. United States*, 852 F.Supp. 628 (W.D. Mich. 1994) to support this proposition. Debtor disagrees. Debtor contends that under Michigan's tenancy by the entireties law, Debtor by herself did not have the right to encumber the Property. The Court agrees with the Debtor.

In Michigan, property held by a husband and wife is a tenants by the entireties property interest.

7

> Michigan's version of the estate is typical of the modern tenancy by the entirety. Following Blackstone, Michigan characterizes its tenancy by the entirety as creating no individual rights whatsoever: It is well settled under the law of this State that one tenant by the entirety has no interest separable from that of the other. . . . Each is vested with an entire title. And yet, in Michigan, each tenant by the entirety possesses the right of survivorship. Each spouse-the wife as well as the husband-may also use the property, exclude third parties from it, and receive an equal share of the income produced by it. <u>Neither spouse may unilaterally alienate or encumber the property</u>, although this may be accomplished with mutual consent. Divorce ends the tenancy by the entirety, generally giving each spouse an equal interest in the property as a tenant in common, unless the divorce decree specifies otherwise.

*In re* Guzior, 347 B.R. 237, 244 (Bankr. E.D. Mich. 2006) (quoting *United States v. Craft*, 535 U.S. 274, 281-82 (2002) (citations and footnote omitted) (emphasis added). As explained by the Sixth Circuit Court of Appeals in *Liberty State Bank Trust v. Grosslight (In re Grosslight)* 757 F.2d 773 (6th Cir. 1985):

> Michigan is among the minority of states retaining the common law tenancy by the entirety. Tenants by the entirety, who must be husband and wife, hold under a single title with right of survivorship. <u>Neither husband nor wife acting alone can alienate any interest in the property</u>, nor can the creditors of one levy upon the property; but their joint creditors can reach entireties property.
>
> Under Michigan law, ordinary creditors cannot reach interests in entireties property, and the entire interest will therefore be exempt if there are no joint creditors. Joint creditors, however, can reach entireties interests, subject only to the $3,500 homestead exemption in Mich. Const. art. 10, § 3.

*Grosslight*, 757 F.2d at 775-77 (*citing Sanford v. Bertrau*, 204 Mich. 244, 169 N.W. 880 (1918) (emphasis added).

Contrary to SunTrust's efforts to distinguish it factually, the decision of the Michigan Supreme Court in *Naylor v. Minock*, 96 Mich. 182, 55 N.W. 664 (1893) is directly on point to the circumstances in this proceeding. In *Naylor*, the wife alone executed a mortgage on property that was held by her and her husband as tenants by

8

the entirety. The husband was not a party to the mortgage because he had been found not to have the legal capacity to enter into contracts. The purpose of the mortgage was to secure the husband's individual criminal and mental care debts. The mortgagor sought to foreclose on the property. The Michigan Supreme Court held that since the property was held by the wife and husband as tenants by the entirety, "neither could convey without the other joining in the conveyance." *Id.* at 665. As a result, the court found that the "mortgage was not valid, in its inception, to convey any estate[.]"

Based on the above, the Court determines that SunTrust's mortgage is not valid.[1] SunTrust does not dispute that the mortgage was signed by Debtor alone and was not executed by her husband, Todd Lash. Since the Property is held by them as tenants by the entireties, both of them were required to execute the mortgage for it to be valid at the time of inception in order to convey any estate to secure SunTrust's interest in the Property. *Naylor*, 96 Mich. at 184-85. *See also* Standard 6.9, MICHIGAN LAND TITLE STANDARDS (Real Property Law Section of the State Bar of Michigan, 6th ed., May 2007).

---

1. The Court rejects SunTrust's contention that the holding in *Fischre v. United States*, 852 F.Supp. 628 (W.D. Mich. 1994) should be applied in this proceeding for two reasons. First, a substantive distinction exists between this proceeding and the *Fischre* case. The law the *Fischre* Court was interpreting and applying pertained to the rights of a federal collector under the Federal Debt Collection Procedure Act, 28 U.S.C. § 3201(a). In contrast, this proceeding involves state law issues, which define the property rights of a debtor and the collection rights of a state law creditor. Second, the holding in *Fischre* has not been extended to or applied to protect a creditor, like SunTrust, under state law. This may be because to do so would be contrary to: (1) Michigan's bedrock principles of protecting tenancy by the entireties property from the individual creditors of a spouse; and (2) Mich. Comp. Laws § 600.2807(1), which was enacted ten years after the *Fischre* decision. This statute prevents a judgment lien from "attach[ing] to an interest in real property owned as tenants by the entirety unless the underlying judgment is entered against both the husband and wife." Mich. Comp. Laws § 600.2807(1) would definitely hinder the recovery rights of SunTrust against the Debtor. If SunTrust obtains a judgment against the Debtor, SunTrust would be precluded under Mich. Comp. Laws § 600.2807(1) from placing a lien on the Property since the judgment would only be against the Debtor individually. SunTrust has not explained to the Court why it should disregard this statute and instead apply the holding in *Fischre*, which would directly conflict with the requirements of Mich. Comp. Laws § 600.2801(1). The Court declines to apply or extend the reasoning in *Fischre* in this proceeding.

Even if the Court were to determine that the mortgage could be rendered valid by precluding the Debtor from challenging the validity of it on equitable estoppel grounds,[2] an argument SunTrust did not clearly articulate, the current record prevents the Court from doing so. SunTrust failed to produce any documentary evidence to establish that the Debtor intentionally misled SunTrust about her interest in the Property at the time she signed the mortgage, or that SunTrust relied on any misrepresentation by the Debtor.

Moreover, viewing certain documentary evidence offered by SunTrust leads the Court to conclude that such documents undermine SunTrust's equitable argument. The settlement statement, dated November 29, 2000, offered by SunTrust indicates that funds were set aside to payoff the underlying land contract signed by the Debtor and her husband, Todd Lash, for the Property to the Rices. On this same date, the Rices executed a warranty deed conveying the Property to the Debtor and Todd Lash as husband and wife, which established that they held the Property as tenants by the entireties. SunTrust, or its agent, presumably were aware of the interest held by the Debtor and her husband in the Property. SunTrust, for some unknown reason, did not require that Todd Lash be made a party to the note and mortgage or require anyone, such as the Debtor, to sign as an agent or power of attorney for Todd Lash. The record also demonstrates that SunTrust was provided with another chance to correct this error eight months later when Debtor executed the Modification Agreement in July 2001. But SunTrust failed to capitalize on this opportunity to secure its interest in the Property by requiring or making Todd Lash a party to the note or mortgage.

SunTrust, in essence, now wants this Court to save it from its own mistakes. As stated by the Michigan Court of Appeals in *Townsend v. Chase Manhattan Mortgage*

---

2. SunTrust's reliance on *In re Belinger Trust* is misplaced. In the *Belinger Trust* decision, the court applied equitable estoppel and the doctrine of election in the context of a dispute about distributions made under a trust. To the extent that SunTrust is relying on the doctrine of election, the Court concludes that while the record indicates that Debtor accepted disbursements from SunTrust according to the terms of their loan agreement, this does not establish that Debtor somehow exercised any election. The doctrine of election does not apply in this matter.

10

*Corp.*, 254 Mich. App. 133, 139-40, 657 N.W.2d 741 (2002): "The only equity that defendant seeks to have done here is to save defendant from [its] mistake[s] . . . in not insisting that [Debtor's husband] pledge his interest in the property to secure the loan, . . . mistake[s] that defendant could easily have discovered[.]" The Court acknowledges that Debtor and her husband may receive a windfall here, but it is one that could have been avoided by SunTrust. SunTrust was the party that had the most to lose and the one who possessed the most incentive to prevent such a loss by making sure to properly protect its rights as a secured creditor.

B.  The current state of the facts in this proceeding preclude the Court from determining that Cross Defendant Todd Lash ratified the mortgage.

In its Cross Claim, SunTrust requests that the Court determine that the mortgage may be determined to be valid due to the principle of ratification. To support its position, SunTrust relies *Bruno v. Zwirkoski*, 124 Mich. App. 664, 668, 335 N.W.2d 120 (1983), which states that the "[u]nauthorized acts of an agent are ratified if the principal accepts the benefits of the unauthorized acts with knowledge of the material facts." SunTrust also relies on *Shuell v. London Amusement Co.*, 123 F.2d 302 (6th Cir. 1941).

SunTrust's theory is that the Debtor was acting as her husband's agent when she signed the note and mortgage, which means that in the event her actions were not authorized by Mr. Lash, he "ratified" her actions when he accepted the benefits of the money Debtor obtained from SunTrust to improve the value of the Property by building a home on the Property, because he knew only the Debtor obtained the money by executing a note and mortgage pledging the Property as collateral.

Ratification is defined as: "the affirmance of a prior act done by another, whereby the act is given effect as if done by an agent acting with actual authority." *Restatement (Third) of Agency*, § 4.01 (2006).

Although SunTrust contends it is entitled to judgment as a matter of law, the Court concludes that SunTrust did not meet its initial burden as the moving party. The Court was unable to locate in any of the documentary evidence proffered by SunTrust a document indicating that an agency relationship existed between the Debtor and her

11

husband. The Court is unable to infer an agency relationship simply from the fact of their relationship as husband and wife. There is nothing in the record to remotely indicate or establish that Debtor was acting as Mr. Lash's agent, or that she was acting on his behalf, when she signed the mortgage. While SunTrust glosses over this element of its ratification theory to solely focus on Mr. Lash's conduct subsequent to the execution of the mortgage and his alleged knowledge of the mortgage, this is a fundamental element that SunTrust must establish as well.

SunTrust's reliance on *Shuell v. London Amusement Co.*, 123 F.2d 302 (6th Cir. 1941) aptly demonstrates this deficiency. In *Shuell,* the record established through uncontroverted testimony that the husband signed a memorandum lease agreement for space in a building solely owned by his wife on her behalf as follows – the signature line indicated "Lillian M. Shuell by Frank Shuell." *Id.* at 303. When questioned by a party to the agreement as to why the husband signed this way, the husband "asserted that he had power of attorney from his wife." *Id.* Later, his wife signed a formal lease prepared by her husband that conformed with the terms of the memorandum lease agreement previously signed by him. In addition, the record in *Shuell* established that the husband was acting as his wife's alter ego in his management of the building she solely owned to obtain a third party's efforts to make substantial and expensive improvements to space in the building. *Id.* When the wife tried to disregard her husband's renewal memorandum agreement of the lease after the third party had already partially performed, the district court concluded that the wife could not do so because by her course of conduct she had already ratified her husband's actions. *Id.* at 305.

There are numerous factual distinctions between the record in the *Shuell* case and in this proceeding. First, the note and mortgage only contain the Debtor's signature in her capacity as borrower. Neither of them contain any indication that Debtor signed them on behalf of her husband. Second, there is no evidence in the record that indicates Debtor made any representations to SunTrust that she was acting on behalf of her husband. Third, there is nothing in the record to establish that Mr. Lash made any representations to SunTrust, either orally or in writing, to confirm that he agreed to and

12

accepted Debtor's act of encumbering the Property when she signed the mortgage.

While the Court recognizes that the *Shuell* court affirmed the district court's finding that written proof of the husband's power of attorney was not necessary to establish that the husband was his wife's agent, it did so based on the overwhelming documentary and testimonial evidence in the record about the extensive actions engaged in by the husband to manage the property, the authority delegated by the wife to her husband to represent her interests, and her failure to renounce her husband's actions. The documents proffered by SunTrust fail to match in comparison.

Even if the Court were to conclude that SunTrust met its initial burden and the Debtor was required to come forward to establish the existence of a genuine issue of fact, the Court would determine that Debtor met her burden. For example, Debtor asserts in her response to SunTrust's motion for summary judgment that Mr. Lash was unaware of the existence of the SunTrust mortgage for a significant time after the mortgage was executed by the Debtor. It is also asserted by Debtor that Mr. Lash refused her request to sign a mortgage. These facts alone negate SunTrust's theory that Debtor had authority to act on Mr. Lash's behalf at the time she signed the mortgage. The Court concludes that SunTrust's motion for summary judgment on its cross claim will be denied.

## VII. Conclusion

For the reasons explained, the Court denies SunTrust's motion for summary judgment on Debtor's complaint and in construing Debtor's response to SunTrust's motion, grants summary judgment to Debtor on its complaint. In addition, the Court denies SunTrust's motion for summary judgment on its cross claim. An appropriate order will enter.

**Signed on September 22, 2008**

                                          **/s/ Daniel S. Opperman**
                                        **Daniel S. Opperman**
                                        **United States Bankruptcy Judge**